UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NICOLE M. BELL,

                        **REPORT AND**
                        **RECOMMENDATION**

                Plaintiff,

v.

                        24-cv-00572(JLS)(JJM)

KALEIDA HEALTH; JONATHAN HART;
KIMBERLY WEAR; VANESSA O'NEIL;
UNIVERSITY OF THE STATE OF NEW YORK, by
and through the Board of Regents; LESTER W.
YOUNG, JR., Chancellor, Board of Regents of the
University of the State of New York, in his
official capacity; and BETTY A. ROSA,
Commissioner of the New York State
Education Department, in her official capacity,

                Defendants.
_____

        Plaintiff Nicole Bell commenced this removed action in the New York State Supreme Court, Erie County, alleging a variety of claims arising from her termination by defendant Kaleida Health as a Nursing Supervisor and subsequent disciplinary proceeding commenced by the State Defendants.[1] *See* Complaint [1-1].[2]

        Before the court are the motions by the State Defendants to dismiss the Complaint pursuant to Fed. R. Civ. P. ("Rules") 12(b)(1) and 12(b)(6) [7], and by the Kaleida Defendants[3]

---

[1]     The "State Defendants" collectively refers to the University of the State of New York, Chancellor Lester Young, Jr., and Commissioner Betty Rosa.

[2]     Bracketed references are to CM/ECF docket entries and page references are to CM/ECF pagination.

[3]     The "Kaleida Defendants" collectively refers to Kaleida Health, Jonathan Hart, Vanessa O'Neil, and Kimberly Wear.

to dismiss the Complaint pursuant to Rule 12(b)(6) [9], which have been referred to me by District Judge John L. Sinatra, Jr. for initial consideration [6]. Having reviewed the parties' submissions [7, 9, 13, 14, 22, 23], I recommend that the motions be granted.

## BACKGROUND

Bell was allegedly a long tenured employee of Kaleida, most recently employed as the Nursing Supervisor at its HighPointe on Michigan skilled nursing facility. *See* Complaint [1-1], ¶10. She allegedly suffers from anxiety which required her to take intermittent leave under the Family and Medical Leave Act ("FMLA"). *See* id., ¶13.

In January 2022, Bell allegedly returned from FMLA leave and that month reported to defendants Jonathan Hart, Kaleida's Vice President of Long-Term Care, and Kimberly Wear, Kaleida's Acting Director of Nursing, that there was a "chronically unsafe condition in the facility because of severe understaffing". She requested a "correction plan for this staffing crisis, but none was generated or delivered". Id., ¶¶3, 4, 20. On several occasions, understaffing allegedly resulted in patients not "being administered their medications". Id., ¶22. However, "no one was prosecuted" for these omissions. Id.

On February 22, 2022, Bell allegedly completed her day shift and began the overnight shift, but "quickly realized" that there were only seven nurses on duty for a shift that required at least 13 nurses. Id., ¶¶23, 24. Bell alleges that she followed "protocol" in this circumstance by first requesting "multiple nurses to float", but when these attempts failed, she reported to her supervisor, Vanessa O'Neil, Kaleida's Assistant Director of Nursing, that "an unsafe situation developed". Id., ¶¶5, 24-25. She allegedly informed O'Neil that she "would have to go home because she could not handle the stress of the chronic understaffing . . . . having

only recently returned from a disability leave", and that she "was not able to administer medications because she had not done so in 12 years, and . . . believed that it would be unsafe for her to do so". Id., ¶¶28-30. O'Neil allegedly told her not to leave, and stated that she would "help by coming in herself to administer medications, if necessary. But she never did." Id., ¶31.

Allegedly "when there is staffing shortage, the nurse managers of each unit are supposed to be called", but when Bell asked O'Neil "about this . . . she did not respond". Id., ¶33. Nevertheless, Bell allegedly completed her shift "without any incident - no codes, no falls, no emergencies". Id., ¶34. However, when she returned to work the next day, she was allegedly "ambushed by [d]efendants, who told her that she was being placed on administrative leave because some patients allegedly had not received their medications the night before, and that an investigation would ensue". Id., ¶36. Wear also allegedly told Bell that she had been reported to "'the Office of Professional Conduct'". Id., ¶37.

According to Bell, "[d]efendants had concocted a trumped-up story to shift blame onto [her] for [their] failure to have adequate staffing" and "punish [her] for whistle-blowing and resistance". Id., ¶¶39, 42. She also contends that defendants' investigation into her alleged "gross negligence" was "a sham". Id., ¶44.

As a result of this alleged conduct, Bell asserts the following Causes of Action:

-- First: A violation of New York Executive Law §296 for discharging her because of her disability and for failing to give her a reasonable accommodation;

-- Second: A violation of New York Labor Law §741 for discharging her in retaliation for her complaints of chronic understaffing;

-- Third: A violation of equal protection pursuant to 42 U.S.C. §1983;[4]

---

[4] The Notice of Removal [1] premised jurisdiction on the fact that "the Complaint alleges violations of Section 1983 and the United States Constitution". Id., ¶8.

-- Fourth: Injunctive relief for "dismissal and cessation of the [pending] enforcement action against her nursing license"; and

-- Eighth: A declaratory judgment pursuant to New York Civil Practice Law and Rules 3001.[5]

Although the causes of action are broadly asserted against the "defendants", the State Defendants interpret the Complaint as only asserting the Third, Fourth and Eighth Causes of Action against them (*see* State Defendants [7-1] at 7), and the Kaleida Defendants interpret the Complaint as asserting the First through Third and Eighth Causes of Action against them. *See* Kaleida Defendants [9-1] at 12. This is not disputed by Bell.

## DISCUSSION

The standards for dismissal under Rules 12(b)(6) and 12(b)(1) differ. "To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege enough facts to state a claim for relief that is plausible on its face . . . and provide more than a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement." Shara v. Maine-Endwell Central School District, 46 F.4th 77, 82 (2d Cir. 2022). Unless it would be futile, "this circuit strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)". Porat v. Lincoln Towers Community Association, 464 F.3d 274, 276 (2d Cir. 2006).

---

[5] In response to defendants' motions to dismiss, Bell has abandoned the Fifth (intentional infliction of emotional distress), Sixth (negligent infliction of emotional distress), and Seventh (defamation) Causes of Action. *See* Bell's Memorandum of Law [14] at 4 n. 1.

By contrast, "[a] case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "A motion to dismiss for sovereign immunity under the Eleventh Amendment is properly brought pursuant to Rule 12(b)(1)." Long Island Pure Water Ltd. v. Cuomo, 375 F. Supp. 3d 209, 215 (E.D.N.Y. 2019).

A.     **State Defendants' Motion to Dismiss**

1.     **Sovereign Immunity**

The State Defendants argue that Eleventh Amendment sovereign immunity bars suit against the University of the State of New York and the monetary damages claims against Chancellor Young and Commissioner Rosa, who are sued in their official capacities. *See* State Defendants' Memorandum of Law [7-1], Points I and II.  In response, Bell does not dispute that Eleventh Amendment sovereign immunity would bar the claims, but instead contends that the removal of this action from New York State Supreme Court to this court waived the State Defendants' sovereign immunity. *See* Bell's Memorandum of Law [14], Point I.  In support of this argument Bell relies solely on Lapides v. Board of Regents of University System of Georgia, 535 U.S. 613 (2002).

However, Lapides was limited solely "to the context of state-law claims". 535 U.S. at 617.  It also "stands for the more limited rule that where a state's immunity has already been waived or abrogated in state court, it cannot escape liability by removing the matter to federal court". Nichols v. Livingston County, 2019 WL 3935998, *9 (W.D.N.Y. 2019); Lapides, 535 U.S. at 617-18 (declining to "address the scope of waiver by removal in a situation where

the State's underlying sovereign immunity from suit has not been waived or abrogated in state court"); Mone v. New York State Unified Court System, 2023 WL 4424093, *6 (E.D.N.Y.), adopted, 2023 WL 4073770 (E.D.N.Y. 2023), aff'd, 2024 WL 1109258 (2d Cir. 2024) ("the Supreme Court held in Lapides that a State's 'act of removing a lawsuit from state court to federal court waives' Eleventh Amendment immunity, *at least if the State has waived immunity to suit in state court as well*" (emphasis added)).

That is not the case here. The University of the State of New York "would have been immune to [p]laintiff's federal claims in New York State Supreme Court, where the action was initially filed". Nichols, 2019 WL 3935998 at *10 (*citing* N.Y. Constitution, Article VI, §9). Thus, Bell's reliance on Lapides is misplaced. In any event, even if the State Defendants' removal of this case to federal court waived their Eleventh Amendment immunity, general sovereign immunity would remain. See Beaulieu v. Vermont, 807 F.3d 478, 490 (2d Cir. 2015).

Therefore, I recommend that Bell's claims against the University of the State of New York and the monetary damages claims against Chancellor Young and Commissioner Rosa be dismissed, with prejudice.

### 2. Third Cause of Action: 42 U.S.C. §1983

This Cause of Action, which is brought against all defendants, relate to the alleged commencement in February 2023 of a disciplinary proceeding against Bell by the State Defendants through their Office of Professional Discipline. *See* Complaint [1-1], ¶72. Bell alleges that this "enforcement action . . . is discriminatory and singles [her] out for punishment in retaliation for exercising her rights to disclose dangerous conduct and in opposing unlawful activity posing a danger to public health and safety". Id., ¶75. According to her, "[n]o similarly situated nurses have been subjected to enforcement by [d]efendants with respect to the events on

February 22, 2022", and that this "selective treatment was motivated by animus and meant to punish [her] in retaliation for her disclosure of and opposition to [d]efendants' wrongful conduct and to shift blame onto [her] for their own fault". Id., ¶¶75, 77.

"[W]here a plaintiff does not claim to be a member of a constitutionally protected class, [s]he may bring an [e]qual [p]rotection claim pursuant to one of two theories: (1) selective enforcement, or (2) 'class of one.'" Kirton v. Doe, 2024 WL 809904, *5 (S.D.N.Y. 2024). Under a "class of one" theory of equal protection, a plaintiff must allege that "she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment". Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). By contrast, to state an equal protection claim under a selective enforcement theory, a plaintiff must allege that she was "treated differently from another similarly situated comparator" and that "the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as . . . to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person". Hu v. City of New York, 927 F.3d 81, 95 (2d Cir. 2019).[6]

"[B]oth types of Equal Protection claims require a showing that the plaintiff was treated differently from another similarly situated comparator", but the standard for what constitutes "similarly situated" differs between the claims. Hu, 927 F.3d at 93. Whereas a class of one claim "requires an 'extremely high' degree of similarity between a plaintiff and

---

[6] Although not raised by the State Defendants, it does not seem plausible that the State Defendants' would have an improper motivation for its alleged selective enforcement. The Complaint offers two theories: to cover up the Kaleida Defendant's negligence and to punish Bell for her complaints. Complaint [1-1], ¶¶77, 85, 93. However, there are no allegations that the State Defendants were even aware of any negligence by the Kaleida Defendants or Bell's earlier staffing complaints.

comparator", id.,[7] a selective enforcement claim requires a "'reasonably close resemblance' between a plaintiff's and comparator's circumstances". Id.

        The State Defendants argue that Bell's claim must be dismissed because she "fails to adequately allege similarly situated comparators". State Defendants' Memorandum of Law [7-1] at 12.  I agree.   Although "issues regarding appropriate comparators are often addressed in the context of a summary judgment motion following discovery, courts grant motions to dismiss where the complaint failed to proffer sufficient facts regarding comparators to plausibly support the contention the comparators were similarly situated to the plaintiff". Freckleton v. Mercy College NY, 2023 WL 2648827, *6 (S.D.N.Y. 2023).

        The Complaint broadly alleges that there were "allegations of gross negligence and negligence against . . . Bell" (Complaint [1-1], ¶72), but without any specificity as to what alleged acts of gross negligence and negligence were asserted in the disciplinary proceeding, it is difficult, if not impossible, to adequately allege that similarly situated individuals were treated differently. *See* State Defendants' Memorandum of Law [7-1] at 12.

        In any event, even assuming that the alleged acts of negligence and gross negligence were only related to patients not being medicated on the February 22-23, 2022 shift, the Complaint still falls short.  The Complaint identifies the comparators as "the other nurses on duty and who should have been on duty, like O'Neil and Wear". Complaint [1-1], ¶87.  In response to the motion, Bell argues that these individuals "had overlapping responsibilities concerning patient care", but that allegation is not in the Complaint, which is devoid of any allegations that anyone other than Bell - the Nursing Supervisor - had responsibility for ensuring

---

[7]     *See also* Reddy v. Catone, 2015 WL 11023213, *16 (N.D.N.Y. 2015), aff'd, 630 F. App'x 120 (2d Cir. 2015) ("[t]he plaintiff's burden on 'class of one' claims is 'extremely high,' and a plaintiff cannot prevail absent a prima facie showing that he is 'identical in all relevant respects' to the individuals with whom he compares himself").

that patients received their medications while she was on duty. See <u>Brenner v. Brenner</u>, 821 F. Supp. 2d 533, 538 (E.D.N.Y. 2011) ("[i]t is well-settled that in examining the sufficiency of the Complaint, the allegations in the pleading - not the arguments advanced by counsel - control"). Although Bell alleges that "on several occasions, patients were left without being administered their medications and no one was prosecuted for it" (Complaint [1-1], ¶22), she offers no detail about when this occurred or who was responsible for administering the medications or overseeing that the medications were administered when these lapses took place. Therefore, I recommend that this claim be dismissed.[8]

### 3. Fourth and Eighth Causes of Action

Since Bell fails to state an equal protection claim against the State Defendants, I likewise conclude that she fails to establish any basis for the injunctive or declaratory relief sought, and recommend that the Fourth and Eighth Causes of Action also be dismissed.[9]

## B. Kaleida Defendants' Motion to Dismiss

### 1. Third Cause of Action: 42 U.S.C. §1983

The Kaleida Defendants argue that Bell "fails to plausibly allege that [they] and the State Defendants 'shared some common goal to violate her rights' or that they conspired". Kaleida Defendants' Memorandum of Law [9-1] at 25. Bell disagrees, arguing that the Complaint "alleges that the Kaleida Defendants used the state-sponsored professional

---

[8] Alternatively, the State Defendants argue that Bell's claims are not ripe until the disciplinary proceeding against her has fully concluded. See State Defendants' Memorandum of Law [7-1], Point V. However, it is unnecessary for me to reach that argument.

[9] The State Defendants argue that to the extent the Complaint can be interpreted as asserting a First Amendment retaliation claim, it must also be dismissed. See State Defendants' Memorandum of Law [7-1], Point IV. This is not contested by Bell.

disciplinary process as a form of internal discipline of its own employees". Bell's Memorandum of Law [13] at 14.

"To plead that a private party was a willful participant in joint activity with the state, [a plaintiff] must plausibly allege that the private party and the state share some common goal to violate the plaintiff's rights." Cheruvu v. HealthNow New York, Inc., 2023 WL 3443362, *2 (2d Cir. 2023). "A plaintiff is not required to list the place and date of defendants' meetings and the summary of their conversations when she pleads conspiracy, but the pleadings must present facts tending to show agreement and concerted action." Chisolm-Mitchell v. Ahmed, 2021 WL 512460, *2 (E.D.N.Y. 2021). However, "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a [section] 1983 claim against the private entity". Cheruvu, 2023 WL 3443362 at *2.

Here, Bell offers no factual support for her conclusory allegations that "[d]efendants acted in concert to damage" her and "confederated and agreed with each other to selectively enforce the professional conduct rules against" her. Complaint [1-1], ¶¶ 92, 94. *See* Ciambriello v. County of Nassau, 292 F.3d 307, 324 (2d Cir. 2002) ("[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity").

The only non-conclusory allegation against the Kaleida Defendants is that they "falsely stated" to the State Defendants "that . . . Bell had specifically been instructed to administer medications to certain patients". Complaint [1-1], ¶90. However, as the Kaleida Defendants argue, and Bell does not dispute, the alleged provision of false information concerning Bell to the State Defendants responsible for Bell's disciplinary proceeding, standing alone, fails to establish the existence of a conspiracy between the Kaleida and State Defendants.

*See* Cheruvu, 2023 WL 3443362 at *2 ("the law is clear that the provision of information to law-enforcement agencies does not by itself make a private party a joint participant in state action under section 1983"); Young v. Suffolk County, 705 F. Supp. 2d 183, 196 (E.D.N.Y. 2010) ("[t]he provision of information to . . . police officers, even if that information is false or results in the officers taking affirmative action, is not sufficient to constitute joint action with state actors for purposes of § 1983").

While the Kaleida Defendants are alleged to have "instigat[ed] charges against . . . Bell to cover their own negligence" (Complaint [1-1], ¶93),[10] "'[a] private party does not act under color of state law when she merely elicits but does not join in an exercise of official state authority'". Serbalik v. Gray, 27 F. Supp. 2d 127, 131-32 (N.D.N.Y. 1998) (*quoting* Auster Oil & Gas, Inc. v. Stream, 764 F.2d 381, 388 (5th Cir.1985)). *See also* Dahlberg v. Becker, 748 F.2d 85, 93 (2d Cir. 1984) ("the mere invocation by defendants of New York's legal procedures does not constitute joint participation so as to satisfy the statutory requirement under § 1983 that there be a state actor"); Tarkowski v. Robert Bartlett Realty Co., 644 F.2d 1204, 1208 (7th Cir. 1980) ("[a] private person does not conspire with a state official merely by invoking an exercise of the state official's authority").  Bell's Complaint lacks any non-conclusory allegations that the State Defendants' disciplinary action against Bell was a concerted effort between the Kaleida and State Defendants.  Therefore, I recommend that this claim be dismissed.

---

[10]    As the Kaleida Defendants note, many of the Complaint's allegations "refer to 'Defendants' collectively, without differentiating between the State Defendants and the Kaleida Defendants". Kaleida Defendants' Memorandum of Law [9-1] at 24. *See, e.g.*, Complaint [1-1], ¶¶36, 39, 42-44, 74-81, 85, 88. This use of "group pleading" contributes to the Complaint's failure to state a claim. *See* Abadi v. NYU Langone Health System, 2024 WL 396422, *2 (S.D.N.Y. 2024) (group pleadings "are routinely rejected by courts as insufficient to state a claim as to any particular defendant").

### 2.     Remaining State Law Claims

!   !   Pursuant to 28 U.S.C. §1367(a), "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution". However, courts "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction". Id. §1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine - judicial economy, convenience, fairness, and comity - will point toward declining to exercise jurisdiction over the remaining state-law claims". Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 (1988).

"[G]iven the absence of a presently viably pled federal law claim, the interests of judicial economy, convenience, fairness, and comity weigh in favor of not exercising supplemental jurisdiction at this time". *See* Sealy v. State University of New York at Stony Brook, 2018 WL 3151701, *16 (E.D.N.Y.), adopted as modified, 2018 WL 1505565 (E.D.N.Y. 2018). Therefore, at this time, I recommend that the court "refrain from exercising supplemental jurisdiction over any . . . state-law claims contained in . . . [the] Complaint". Beazer v. New York State Office of Mental Health, 2017 WL 3822082, *11 (E.D.N.Y.), adopted, 2017 WL 3726038 (E.D.N.Y. 2017).[11]  *See also* Bhattacharya v. Suny Rockland Community College, 719 F. App'x 26, 28 (2d Cir. 2017) ("[w]hen a district court declines to exercise supplemental jurisdiction in a case removed from State court, it has discretion either to dismiss the claims without prejudice or to remand the claims").

---

[11]     If there is an Amended Complaint filed that includes state law claims, I encourage Bell to consider the arguments raised by the Kaleida Defendants in their motion to dismiss (Memorandum of Law [9-1], §§I, II) before repleading those claims.

## CONCLUSION

For these reasons, I recommend that the State and Kaleida Defendants motions to dismiss [7, 9] be granted as detailed above and that the court refrain from exercising supplemental jurisdiction over Bell's state law claims unless and until a federal law claim is adequately pled.

Unless otherwise ordered by Judge Sinatra, any objections to this Report and Recommendation must be filed with the clerk of this court by December 11, 2024. Any requests for extension of this deadline must be made to Judge Sinatra. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: November 27, 2024

/s/Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge